<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____
                        :

CAROL SPACK,                    :
                        :
            Plaintiff,       :
     v.                  :     Civil Action No. 3:17-cv-2687-BRM-LHG
                        :
                        :
TRANS WORLD ENTERTAINMENT  :
CORP.; RECORD TOWN, INC.; RECORD :
TOWN USA, LLC,          :
                        :     **OPINION**
           Defendants.     :
_____:

**MARTINOTTI, DISTRICT JUDGE**

Before this Court are: (1) Defendants Trans World Entertainment Corp. ("TWEC"), Record Town, Inc., and Record Town USA, LLC's (collectively, "Defendants") Motion to (a) transfer this action to the Northern District of New York; (b) stay the litigation pending resolution of this decision; (c) dismiss Record Town USA, LLC for lack of personal jurisdiction; and (d) dismiss Count Three of the Complaint as time-barred (ECF No. 8); (2) Plaintiff Carol Spack's Cross-Motion to Amend her Complaint (ECF No. 11); and (3) Spack's Motion for Equitable Tolling of the Statute of Limitations (ECF No. 24). All motions are opposed except that Spack agreed to voluntarily dismiss Record Town USA, LCC without prejudice. (ECF No. 11 at 1 n.1.)

Pursuant to Federal Rule of Civil Procedure 78(a), the Court heard oral argument on the motions on December 4, 2017. (ECF No. 35.) For the reasons set forth below and for good cause having been shown, Defendants' Motion to Transfer is **GRANTED**. Accordingly, the following motions are **ADMINISTRATIVELY TERMINATED WITHOUT PREJUDICE** and may be

refiled in the Northern District of New York: (1) Defendants' Motion to Dismiss Count Three of the Complaint; (2) Spack's Motion to Amend her Complaint; and (3) Spack's Motion for Equitable Tolling. Defendants' Motion to Stay is **DENIED AS MOOT**. Record Town USA, LCC is **VOLUNTARILY DISMISSED WITHOUT PREJUDICE**, and, therefore, Defendants' Motion to Dismiss Record Town USA, LLC for lack of personal jurisdiction is **DENIED AS MOOT**.

## I. BACKGROUND

This case (the "New Jersey Action") arises out of Spack's employment for TWEC and her claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, the New Jersey Wage and Hour Law ("NJWHL"), N.J. Stat. Ann. 34:11-56.1 to -56.12, and the Pennsylvania Minimum Wage Act ("PMWA"), 35 P.S. § 333.101 *et seq.* Spack files on behalf of herself and all similarly situated current and former TWEC employees. (ECF No. 1 at 1.) A similar matter, filed after this one but further along in the litigation process, is pending in the Northern District of New York, where Defendants are located, as *Roper v. Trans World Ent.*, Case No. 1:17-cv-0553 (the "New York Action").

### A. Defendants' Tolling Agreement with the New York Plaintiffs[1]

On or about March 7, 2017, Defendants received an attorney demand letter from the Shavitz Law Group, P.A. (the "Shavitz Firm") indicating they represented multiple store managers ("SMs") employed by Defendants. (Certification of William J. Anthony (ECF No. 8-1) ¶¶ 4-5.) While the Shavitz Firm threatened to file a nationwide class action alleging violations of the FLSA and various state wage and hour laws, they were also willing to engage in pre-suit settlement discussions, which Defendants entertained. (*Id.* ¶¶ 5-6.) Defendants' counsel entered into a tolling

---

[1] Spack disputes the relevancy of this agreement. While not dispositive to the Court's opinion, it is included by way of background and due to the amount of briefing dedicated to the topic.

agreement with the Shavitz Firm, effective April 1, 2017 (the "Tolling Agreement"), in order to

proceed without prejudice to plaintiff's potential claims. (*Id.* ¶ 7.) The Tolling Agreement was

> made by and between [TWEC], its officers, agents, parent
> corporations, subsidiaries, and/or representatives . . . , and Richard
> Brushett and Natasha Roper ("Plaintiffs"). This agreement is for the
> benefit of Plaintiffs and "Potential Plaintiffs," as defined herein.
> "Potential FLSA Plaintiffs" are individuals classified as exempt
> [SMs] employed with [TWEC] in the United States during the three
> years preceding the date of this Agreement who affirmatively opt in
> to any later filed FLSA action by Plaintiffs by filing an otherwise
> timely consent to join with the court. "Potential State Law Class
> Members" are individuals who fall within any later certified class of
> exempt [SMs] in an action initiated by Plaintiffs alleging state wage
> law violations.

(Tolling Agreement, Exhibits to Anthony Cert. (ECF No. 8-2), Ex. A.)

### B. The New Jersey Action

On April 20, 2017, Spack filed this lawsuit on behalf of herself and those similarly situated.

(ECF No. 1.) Defendants' counsel certifies pre-suit settlement discussions were still on-going with

the Shavitz Firm. (ECF No. 8-1 ¶ 9.) Spack alleges Defendants violated the FLSA, NJWHL, and

the PMWA by failing to pay the correct overtime rate when they used the fluctuating work week

("FWW") method to calculate overtime wages. (ECF No. 1 ¶¶ 1-5.) The proposed class in the New

Jersey Action includes SMs and senior assistant managers (SAMs). (*Id.* ¶ 3.)

### C. The New York Action

On May 19, 2017, the Shavitz Firm filed a lawsuit in the Northern District of New York,

which, according to Defendants, "essentially[] brings the claims threatened by" the Shavitz Firm's

initial demand. (ECF No. 8-1 ¶ 11.) Defendants argue the filing of the New York Action terminated

the Tolling Agreement. (*Id.* ¶ 14.) That issue is not before this Court.

Based on representations by Defendants, the New York Action has proceeded to discovery

and has been referred to mediation, scheduled to begin in January 2018.

### D. Parties' Motion Practice

On June 14, 2017, Defendants moved to (1) transfer the New Jersey Action to the Northern District of New York; (2) stay the case pending resolution of the motion; (3) dismiss defendant Record Town USA LLC for lack of personal jurisdiction; and (4) dismiss Count Three for failure to state a claim. (ECF No. 8.) Regarding the transfer, Defendants argue New York is a more appropriate venue because Defendants' main offices are located there and, in a class action setting, a representative plaintiff's preference is less significant because plaintiffs will be nationwide.

Spack opposed the motion, agreed to voluntarily dismiss Record Town USA LLC, and cross-moved to amend the Complaint. (ECF No. 11 & n.1.) In opposition to the case being transferred, Spack argues Defendants have not met their heavy burden in showing that the private and public factors considered in a transfer motion strongly weigh in their favor. She relies heavily on her case being filed first and notes that more potential plaintiffs will hail from New Jersey and Pennsylvania than New York based on Defendants' store locations. Plaintiff also notes that Natasha Roper, the New York representative plaintiff, lives in New Mexico, which is closer to New Jersey than New York.

On September 12, 2017, while the motions were pending, Spack filed a letter asking the Court to rule on the motions to prevent the filing of a motion for equitable tolling and to prevent further prejudice to potential plaintiffs. (ECF No. 21.) Both parties used this opportunity to submit letters to the Court regarding the merits of the pending motions. (ECF Nos. 21-23.) On September 20, 2017, Spack filed the motion for equitable tolling. (ECF No. 24.) The motion argues good cause exists to toll the statute of limitations because of the Courts' delay and because potential class members may not be aware of their legal rights or claims. Defendants argue nothing is

stopping potential plaintiffs from filing their own claims and that Spack has not shown why tolling is warranted. (ECF No. 25.)

Between October 12, 2017, and November 3, 2017, another letter-writing campaign took place. (ECF Nos. 27-31.) Defendants asked the Honorable Lois H. Goodman, U.S.M.J., to stay discovery, while Spack asked Judge Goodman to move ahead with a Rule 16 initial conference and even served interrogatories. Significantly, however, those letters informed the Court that Spack filed a motion to intervene in the New York Action on September 29, 2017, asking that court to dismiss the New York Action or transfer it to New Jersey. On November 16, 2017, the Court scheduled oral argument on the motions for December 4, 2017.

## II. LEGAL STANDARD

A motion to transfer venue is governed by 28 U.S.C. § 1404(a), which states:

> For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

In deciding a motion to transfer, the Court must first determine whether the alternative forum is a proper venue. *Fernandes v. Deutsche Bank Nat'l Trust Co.*, 157 F. Supp. 3d 383, 389 (D.N.J. 2015); *see* 28 U.S.C. § 1391. Venue is appropriate in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

Once proper venue is established, "[t]he decision whether to transfer falls in the sound discretion of the trial court." *Park Inn Int'l, L.L.C. v. Mody Enters., Inc.*, 105 F. Supp. 2d 370, 377 (D.N.J. 2000). However, "the burden of establishing the need for transfer . . . rests with the movant." *Jumara v. State Farm Ins.*, 55 F.3d 873, 879 (3d Cir. 1995).

The Court must consider three factors when determining whether to grant a transfer under Section 1404(a): (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice. *Liggett Grp., Inc. v. R.J. Reynolds Tobacco Co.*, 102 F. Supp. 2d 518, 526 (D.N.J. 2000) (citing 28 U.S.C. § 1404(a); *Jumara*, 55 F.3d at 879). These factors are not exclusive, and must be applied through a "flexible and individualized analysis . . . made on the unique facts presented in each case." *Id.* at 527 (citations omitted). The first two factors have been refined into a non-exhaustive list of private and public interests that courts should consider. *See Jumara*, 55 F.3d at 879-80.

The private interests a court should consider include:

> (1) plaintiff's forum preference as manifested in the original choice; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses-but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Danka Funding LLC v. Page, Scranton, Sprouse, Tucker & Ford, P.C.*, 21 F. Supp. 2d 465, 474 (D.N.J. 1998) (quoting *Jumara*, 55 F.3d at 879).

The public interests a court should consider include:

> (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at

home; (5) the public policies of the fora; and (6) the familiarity of
the trial judge with the applicable state law in diversity cases.

*Id.* (citing *Jumara*, 55 F.3d at 879-80).

## III. DECISION

### A. Personal Jurisdiction

As an initial matter, this case can only be transferred "to any other district or division where

it might have been brought." 28 U.S.C. § 1404(a). Therefore, the transferee court must have

personal jurisdiction over Defendants under 28 U.S.C. § 1391. For the purpose of the statute, all

Defendants reside in New York because their principal offices are located in Albany, New York.

(ECF No. 1 ¶ 19.) Therefore, the matter could have been originally filed in the Northern District

of New York, "a judicial district in which any defendant resides." 28 U.S.C. § 1391(1). Indeed,

the New York Action is proceeding there against Defendants. Accordingly, the Court may proceed

with its analysis.

### B. Private Factors

#### 1. Plaintiff's forum preference

The parties' preferences in this action inherently compete, and both sides have indicated

their preference for their most convenient state through their filings. Defendants move to transfer

the case to New York where the New York Action was filed, and Spack, who filed the New Jersey

Action, seeks, among other things, to transfer the New York Action here. While the parties have

not expressly stated the cases should be decided in the same district, wherever that may be, they

have indicated they agree on that issue.

The parties dispute how much weight should be given to Spack's preference. Defendants

argue a plaintiff's preference is not given weight where the plaintiff is suing on behalf of a putative

class: "[C]ourts have 'afforded little deference to a plaintiff's choice of forum' because 'in such

7

actions the participation of the class representative is generally minimal' and 'the potential members of the class will likely be scattered across the United States.'" (ECF No. 8-5 at 6 (quoting *Atanassov v. Amspec Servs.*, LLC, 2016 U.S. Dist. LEXIS 22334 at *12-*13 (D.N.J. Feb. 24, 2016) (quoting *Santomenno v. Transamerican Life Ins. Co.*, 2012 U.S. Dist. LEXIS 44883 (D.N.J. Mar. 30, 2012))).) Defendants argue that "plaintiffs are bound to be forced to travel or otherwise inconvenienced regardless of where this matter is venued." (*Id.* at 7.)

Conversely, Spack argues her choice of venue, particularly in light of being the first filed case, is given deference, regardless of whether the case is filed as a collective action: "The law is clear that in determining whether venue for a putative class action is proper, courts are to look only at the allegations pertaining to the named representatives." (ECF No. 11 at 15 (quoting *Tahir v. Avis Budget Group, Inc.*, No. 09-3495 (SRC), 2009 U.S. Dist. LEXIS 115879 (D.N.J. Dec. 14, 2009)).)

Further, Spack argues *Atanassov* is inapplicable to the extent it disregards or gives less weight to plaintiff's choice of forum in an FLSA case; the court transferred the case to the Texas, where an earlier-filed case was pending. (ECF No. 11 at 14.) Finally, Spack argues she provided statistical data where Defendants did not; Spack argues TWEC has twenty-seven stores within a 100-mile radius of the District Court of New Jersey, while only thirteen stores are found within the same jurisdictional radius of the Northern District of New York.

### 2. Defendant's preference, and convenience of the parties and witnesses

Defendants prefer the action be litigated in New York, where the New York Action is already pending, likewise arguing that this will be more convenient for the parties and their witnesses. (ECF No. 8-5 at 7 ("This fact 'weighs in favor of transfer, particularly since another similar case . . . is already pending' in the Northern District of New York." (quoting *Atanassov*,

2016 U.S. Dist. LEXIS 22334 at *13)).) All three named Defendants maintain their corporate headquarters (which houses the Payroll and Human Resources Department) in Albany, and Defendants name three key witnesses located in New York who will likely testify. They note that "litigating this case in New Jersey, as opposed to the Northern District of New York, has the potential to disrupt Defendants' business because key executives who are likely to be called as witnesses would be forced to travel." (ECF No. 8-5 at 8.) Because all Defendants are located in the Northern District of New York and the potential plaintiffs are all over the United States, "[o]n a convenience of the parties analyses, the defendants win, hands down." (ECF No. 8-5 (quoting *Job Haines Home for the Aged v. Young*, 936 F. Supp. 223, 231 (D.N.J. 1996)).)

Regarding Defendants' preference, Spack argues Defendants should be considered one party, because they have the same address and phone number, and that the residences of key executives are immaterial, because local witnesses may be more important:

> While corporate officers hold [sic] up in their offices at Albany HQ may be able to provide written policy information, they cannot testify as effectively as to the implementation, or lack thereof, of those policies. The reality as to how wages were paid on the ground at store level is what will be important to a judge and jury at trial.

ECF No. 11 at 17. Moreover, Spack argues "convenience of the parties" is based on:

> (1) the parties' physical location; (2) the associated logistical and operational costs to the parties' employees in traveling to [New Jersey] (as opposed to the proposed transferee district) for litigation purposes; and (3) the relative ability of each party to bear these costs considering its size and financial wherewithal.

(*Id.* at 20 (citing *Audatex N. Am., Inc. v. Mitchell Intl Inc.*, C.A. No. 12-cv-139 (GMS), 2013 U.S. Dist. LEXIS 90847, at *4 (D. Del. June 28, 2013)).) Therefore, Defendants' size and financial resources relative to Spack's, she argues, weigh against transfer. Additionally, regarding convenience, Spack argues there is a "large pool of material witnesses to be found in the 100-mile

radius of this federal court in Trenton who would likely support Plaintiff's claims at trial," whereas Defendants' key witnesses are limited in number and within their control. (ECF No. 11 at 23.)

### 3. Whether the claim arose elsewhere and location of books and records

Defendants argue Spack's wage and hour claims arose in Albany at the corporate headquarters where the Payroll and Human Resources Department and the relevant books and records are located. Even assuming Spack's injury occurred in New Jersey where she worked for a period of time,[2] "the location of the alleged injury is not considered when determining the 'center of gravity' or where the claim arose in matters where no physical injury has occurred." *Santomenno*, 2012 U.S. Dist. LEXIS at *24. Again, Defendants emphasize the nature of the cause of action, arguing, the location of Spack's alleged injury is given less weight "because 'members of the proposed class will have suffered injury through the United States.'" (ECF No. 8-5 at 8 (quoting *Santomenno*, 2012 U.S. Dist. LEXIS at *24).)

Spack argues the physical location of the corporate records is of no moment in this electronic age and argues her claim arises out of New Jersey where she was most recently employed. Spack relies on *Newhall v. Chase Home Fin. LLC*, 2010 U.S. Dist. LEXIS 115690 (D.N.J. Oct. 28, 2010), in which the court transferred a FLSA case from New Jersey, where defendant's headquarters were located, to Florida, where plaintiff was employed. (ECF No. 11 at 18 ("[T]he *Newhall* court reasoned it was more likely that the relevant witnesses and documents were in Florida where the plaintiff was employed." (*Newhall*, 2010 U.S. Dist. LEXIS 115690, at *10)).)

---

[2] Spack also worked at a TWEC store in Pennsylvania.

### C. Public Factors

#### 1. Enforceability of the judgment

The parties concede this factor is neutral.

#### 2. Practical considerations

Defendants note that "most of the material witness of the defense side live and work in the Northern District of New York" and therefore, between the two districts where similar actions are pending, the Northern District of New York is the more practical one.

Spack argues hers was the first-filed case and that the complaint in the New York Action does not encompass all of the claims brought in the New Jersey Action—most notably, the proposed class in the New York Action does not include SAMs.

#### 3. Relative administrative difficulty resulting from court congestion

Defendants cite Table C-5 of the *Statistical Tables For The Federal Judiciary*, published by the United States Courts, which indicates that the median time-to-trial in the Northern District of New York is 33.1 months for the 12-month period ending June 30, 2016. The median time-to-trial in the District of New Jersey, on the other hand, is 38.3 months for that same period. (ECF No. 8-2, Ex. M.) Defendants argue, "This difference is material, and weighs in favor of transferring this matter to the Northern District of New York, where the docket is slightly less congested." (ECF No. 8-5 at 11.)

Spack argues, quite simply, "Relative congestion of the respective courts' dockets is not a factor of great importance when deciding a 28 U.S.C. § 1404(a) motion." (ECF No. 11 at 29.)

### 4. Local interest in deciding local controversies

Defendants suggest this factor should not be given much weight because of the class action nature of the Complaint, arguing, "the claims at issue are not entirely local." (ECF No. 8-5 at 12 (quoting *Santomenno*, 2012 U.S. Dist. LEXIS 44883 at *30).)

Spack argues "New Jersey has a strong public policy in its Wage and Hour Laws" and therefore "has a local interest in keeping this litigation at home." (ECF No. 11 at 29.)

### 5. Public policy and familiarity of trial judge with applicable law

Defendants argue "[t]here is no compelling public policy reason why this case should be venued in the District of New Jersey as opposed to the Northern District of New York," emphasizing that Spack's complaint raises claims based on New Jersey and Pennsylvania state law, meaning that "either court would be asked to decide state law claims outside of the district in which it sits." (ECF No. 8-5 at 12-13.)

Spack raises concerns over the Northern District of New York's ability to calculate overtime in accordance with various states' laws. Specifically, Spack alleges Defendants used the FWW method to calculate overtime wages—a method that is, according to Spack, permissible in New York, impermissible in Pennsylvania, and undecided in New Jersey. Spack questions a New York court's ability to apply anything other than the FWW method. Spack also argues New Jersey and Pennsylvania are both in the Third Circuit whereas New York is in the Second Circuit.

### D. Consideration of the Private and Public Interests and the Interests of Justice

Defendants have met their burden to show a transfer to the Northern District of New York is warranted. Taking all relevant interests into consideration, the Court is persuaded by the nature of the action, as well as both parties' concession that the actions should be adjudicated in the same

district by one judge. This indicates to the Court that, in this case, Spack's individual interests may be outweighed by larger, class-wide and public interests.

Plaintiffs will be located nationwide, and Spack concedes this in her Complaint. While "substituting one party's inconvenience for another's hardly appears a substantial reason for granting [a] motion [to transfer]," *Park Inn Int'l, LLC*, 105 F. Supp. 2d at 378, a transfer here will not result in a mere substitute of inconveniences.[3] The Northern District of New York is home to all Defendants and, as both parties concede, some potential plaintiffs. Where potential plaintiffs reside in both districts but no Defendants are located in the District of New Jersey, the Northern District of New York is the more favorable venue.

Additionally, Spack's Complaint raises claims arising under New Jersey and Pennsylvania law, and the proposed Amended Complaint seeks to add a Pennsylvania plaintiff. It is counterintuitive that Spack argues the Northern District of New York cannot hear the New Jersey claims but the District of New Jersey can hear the Pennsylvania claims. The Court is not persuaded by Spack's argument distinguishing the Circuits, as "[f]ederal district courts are regularly called upon to interpret laws of jurisdictions outside the states in which they sit." *Yocham v. Novartis Pharma. Corp.*, 565 F. Supp. 2d 554, 560 (D.N.J. 2008).

Notably, the existence of the Tolling Agreement did not impact the Court's decision. Had no Tolling Agreement been executed and the actions been filed in the order they were here, the Court cannot say whether its decision would be different. Practically speaking, the interests of judicial efficiency and economy are best served by this action being joined with the New York Action in the Northern District of New York; that district is less congested, the New York Action

---

[3] While not influential on the Court's decision, it is notable that "Defendants are willing to further mitigate any inconvenience to the named Plaintiff, Ms. Spack, by agreeing to take her deposition in New Jersey even if this action is transferred." (ECF No. 8-5 at 9.)

is moving forward, and mediation is scheduled for January. In this pre-certification stage, this Court has no doubt the proposed class in the New York Action can be amended to accommodate SAMs if necessary.

Taking into account the private and public interest factors and the interests of justice, *Liggett Grp., Inc.*, 102 F. Supp. 2d at 526 (citing 28 U.S.C. § 1404(a); *Jumara*, 55 F.3d at 879), the Court finds Defendants met their burden in demonstrating the motion should be transferred to the Northern District of New York. Accordingly, the Motion to Transfer is **GRANTED**.

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion to Transfer is **GRANTED**. Accordingly, the following motions are **ADMINISTRATIVELY TERMINATED WITHOUT PREJUDICE** and may be refiled in the Northern District of New York: (1) Defendants' Motion to Dismiss Count Three of the Complaint; (2) Spack's Motion to Amend her Complaint; and (3) Spack's Motion for Equitable Tolling. Defendants' Motion to Stay is **DENIED AS MOOT**. Record Town USA, LCC is **VOLUNTARILY DISMISSED WITHOUT PREJUDICE**, and, therefore, Defendants' Motion to Dismiss Record Town USA, LLC for lack of personal jurisdiction is **DENIED AS MOOT**. An appropriate order will follow.

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

Dated:  December 8, 2017